HEISELT CONST. CO. et al. v. INDUSTRIAL COMMISSION OF UTAH.

No. 3620.   Decided April 11, 1921.   (197 Pac. 589.)

1. MASTER AND SERVANT—INDUSTRIAL COMMISSION'S FINDINGS ON SUBSTANTIAL EVIDENCE CONCLUSIVE. Findings of the Industrial Commission supported by substantial evidence will not be disturbed by the Supreme Court.

60            SUPREME COURT OF UTAH            [Apr.

Heiselt Const. Co. v. Ind. Com., 58 Utah 59

2. MASTER AND SERVANT—ADMINISTRATOR NOT ENTITLED TO COMPEN-
SATION ON INJURED EMPLOYÉ'S DEATH FROM OTHER CAUSES PRE-
VIOUS TO AWARD. Where injured employé who would have been
entitled to compensation for specified number of weeks 'under
Comp. Laws.1917, § 3138, as amended by Laws 1919, c. 63, if he
had lived, died from causes in no wise connected with injuries
before he was awarded compensation, his administrator was not
entitled to such compensation, since the right to such compen-
sation was not a right that vested in the employé immediately
upon his injury, and which therefore vested in his estate upon
his death, in view of the purpose of the Workmen's Compensa-
tion Act, its title, and in view of Comp. Laws 1917, § 3140, as
amended by Laws 1919, c. 63 and section 3141.

GIDEON, J., dissenting.

Proceeding under the Workmen's Compensation Act by
A. E. Harvey, as administrator of the estate of David Mur-
phy, deceased, for compensation for injuries sustained by
David Murphy, opposed by the Heiselt Construction Com-
pany, employer, and the Ætna Life Insurance Company, in-
surer. Award of Industrial Commission for claimant, and
the employer and insurance carrier bring an original action
to review the proceedings of the Industrial Commission.

AWARD ANNULLED, with directions to dismiss action.

*E. L. Kearney* and *Gustin, Gillette & Brayton,* all of Salt
Lake City, for plaintiffs.

*Harvey Cluff,* Atty. Gen. (*J. H. Wolfe,* of Salt Lake City,
of counsel), for defendant.

THURMAN, J.

This is an action to review the proceedings of the defend-
ant, Industrial Commission of Utah (hereinafter called Com-
mission) in the matter of an award made by said Commis-
sion to the estate of one David Murphy, deceased, and to
have said award declared null and void. The decision of the
Commission not only contains its findings of fact, conclusions
of law and award, but also the reasons which induced the

Commission to make the award. With the view of making our opinion more intelligible we quote the decision in its entirety.

"I. The defendant employer, Heiselt Construction Company, is, and was on January 10, 1920, an employer subject to chapter 100, Compiled Laws of Utah, 1917, as amended, and that defendant Ætna Life Insurance Company is the insurance carrier of said defendant employer.

"II. That defendant Ætna Life Insurance Company paid deceased $16 per week as compensation for nine weeks, ending March 28th, 1920, and that all medical and hospital service was furnished by defendants in the following amounts: Medical, $38; hospital, $95.

"III. That on the 10th day of January, 1920, David Murphy, of Salt Lake City, state of Utah, was injured by accident arising out of or in the course of his employment, while engaged in the usual course of his trade, business, profession, or occupation of the defendant employer of Provo Canyon, state of Utah.

"IV. That said injury was caused from being exposed to severely cold weather while at his work on January 10, 1920, which resulted in the ends of several of his fingers becoming frozen and later requiring the amputation of right thumb at distal joint, right first finger one-half distal phalanx, right second finger one-half distal phalanx, right third finger three-fourths distal phalanx, left fourth finger three-fourths distal phalanx.

"V. That David Murphy died on the 28th day of March, 1920, from causes in no wise connected with or resulting from said injuries.

"VI. That deceased was 54 years of age, single, and was earning at the time of the accident $31.50 per week, working seven days per week, and that, so far as known, he left no one dependent upon him for support.

"VII. That applicant, A. E. Harvey, is the duly appointed administrator of the estate of David Murphy, deceased.

                              "Conclusions.

"From the foregoing the Commission finds and concludes as follows:

"David Murphy suffered an injury arising out of or in the course of his employment while in the employ of the defendant employer, which would entitle him to the benefits of the Workmen's Compensation Act of Utah for the period of total disability of nine weeks, and in addition thereto compensation for the loss of certain members, equaling 31½ weeks at $16 per week, upon which was paid at the time of his death nine weeks at $16 per week, or $144. There remains unpaid 31½ weeks at $16 per week, or $504, which amount his estate is justly entitled to recover.

62　　　·SUPREME COURT OF UTAH　　　[Apr.

Heiselt Const. Co. v. Ind. Com., 58 Utah 59

"Section 3137 of the Workmen's Compensation Act provides for the compensation payments in cases of temporary disability. This section of the law was complied with by defendant insurance company by their paying the injured David Murphy for that period of time total disability suffered.

"Section 3138 of the act provides in part 'in the case of the following injuries the compensation shall be 60 per cent. of the average weekly wage, but not more than $16, to be paid weekly for the periods stated against such injuries respectively, and shall be in addition to the compensation hereinbefore provided for temporary total disability.' Then follows the schedule.

"It is under this section and schedule that the deceased was entitled to 31½ weeks' compensation, and for which no compensation was paid.

"Section 3145 of the act gives to the Industrial Commission power to commute periodical benefits to one or more lump sum payments.

"In view of the foregoing, and the evident intent of the act to, among other things, relieve the public of the care of such cases as would otherwise become charges upon charity, the Commission finds and concludes that the estate of David Murphy, deceased, should recover in this case, thereby enabling the appointed administrator to pay certain obligations incurred by the deceased and to defray the necessary funeral expenses.

"Therefore, it is ordered, adjudged, and decreed that the defendant Heiselt Construction Company or Ætna Life Insurance Company pay to applicant A. E. Harvey, as administrator of the estate of David Murphy, deceased, the sum of $504, which sum represents compensation at the rate of $16 per week for 31½ weeks, dating from March 28, 1920, the entire amount of which is now due and payable."

Application for a rehearing was denied.

Plaintiffs contend that the evidence is insufficient to establish the fact that David Murphy's thumb and finger were frozen while in the employment of the construction company, or that they were frozen at all. Plaintiffs also challenge the finding that the alleged freezing of the thumb and fingers constituted an injury arising from an accident as contemplated in the Industrial Act. They also challenge the conclusion that the estate of David Murphy is entitled to the benefits he would have received had he lived during the period fixed by the award.

One of the most usual burdens imposed upon this court in this class of cases is to be compelled to declare over and

over again that the court is powerless to disturb findings which are supported by substantial evidence. In the present case there is substantial evidence to support the finding that the thumb and fingers of David Murphy were frozen while in the employment of the construction company on the 10th day of January, 1920. That question is therefore dismissed without further consideration.

Whether the thumb and fingers becoming frozen constituted an injury arising from accident, as contemplated in the Industrial Act, presents a more serious question, and one which, if controlling, should not be summarily disposed of by the court. It presents a mixed question of law and fact, under the authorities we have examined, and its determination requires a close and careful analysis of many conflicting decisions. In the opinion of the writer that question is not controlling in the instant case, and any decision we might render concerning it would at most merely establish a rule for the determination of future cases. For that reason, in the present case we leave the question undetermined.

The correctness of the conclusion reached by the Commission that the estate of David Murphy, deceased, is entitled to succeed to the benefits which he would have received had he lived seems to be the only question left for our determination. A brief statement of the contentions of the respective parties in this regard will tend to narrow the discussion. The defendant contends that the right of David Murphy to compensation for the loss of his thumb and fingers, under C. L. U. 1917, § 3138, as amended in Sess. Laws 1919, p. 161, became a vested right in his lifetime, and upon his death from other causes, without dependents, such right inured to his estate. Plaintiff's contention is that the compensation to which Murphy was entitled for the loss of his thumb and fingers was intended only as compensation for the loss of any wages he might have been enabled to earn in the future if he had not been injured, and was purely a personal right which terminated upon his death.

The question presented is both novel and interesting. It

is to us a case of the first impression. It is insisted by the
defendant Commission that there are cases analogous in
principle and persuasive in support of defendant's conten-
tion. We are referred especially to the case of *Munding,
State ex rel.* v. *Industrial 'Commission of 'Ohio,* 92 Ohio St.
434, 111 N. E. 299, L. R. A. 1916D, 944, Ann. Cas. 1917D,
1162. That case arose under the Ohio Industrial Act which
was in force when the Utah Industrial Act was enacted. It
is generally conceded that the Utah act was patterned after
the Ohio law. Section 35, subd. 2 of the Ohio law (103 Ohio
Laws, p. 72), the construction of which was involved in the
case referred to, reads as follows:

"If there are wholly dependent persons at the time of the death,
the payment shall 'be sixty-six and two-thirds per cent. of the aver-
age weekly wages, and to continue for the remainder of the period
between the date of the death, and six years after the date of the
injury, and not to amount to more than a maximum of thirty-seven
hundred and fifty dollars, nor less than a minimum of one thousand
five hundred dollars."

Section 3140, subd. 2, C. L. U. 1917, as amended in Session
Laws 1919, at page 163, reads:

"If there are wholly dependent persons at the time of the death,
the payment shall be 60 per cent. of the average weekly wages, but
not to exceed a maximum of $16 per week, and to continue for the
remainder of the period between the date of the death, and six
years after the date of the injury, and not to amount to more than
a maximum of $5,000.00, nor less than a minimum of $2,000.00."

It is admitted that as far as any question of construction
is concerned there is no difference in principle between the
statute of Utah and the statute of Ohio in the excerpts
quoted. In the Ohio case the court held that an award of
compensation from the state insurance fund to a wholly
dependent person, under the law of that state, above quoted,
vested in the dependent when the award was made, and in
case of the dependent's death any balance remaining unpaid
passed to his or her personal representative. At page 455
of 92 Ohio St., and at page 304 of 111 N. E. (L. R. A. 1916D,
944, Ann. Cas. 1917D, 1162), the court says:

"We hold that when the award is once made to a sole dependent,
the right to the compensation vests, and once vested there can be

no condition attached except as to the time of payment, and it is equally immaterial whether the dependent subsequently dies or becomes independent."

A literal construction of the language used in the excerpt hardly supports the contention made by defendant in the present case.   The language is:

"*When the award is once made* to a sole dependent the right to the compensation vests."   (Italics ours.)

In this case no award was ever made to a person while living, nor was there a person living to whom it could have been made.   It was not made until December 20, 1920, nearly nine months subsequent to Murphy's death.   This distinction may not be entitled to serious consideration.   The writer has no desire to advance a suggestion by way of argument that is wholly devoid of merit.   The point, however, intended to be made by the distinction referred to is, if the right does not vest until the award is made, then, in the present case, there was no vested right, because there was no one living in whom it could vest.   We can hardly conceive of a right passing to an estate unless the right had vested in some one while living.

In addition to the Ohio case cited in support of defendant's contention that the right of a dependent to compensation is a vested right, defendant cites *Smith v. Kaw Boiler Works Co.*, 104 Kan 591, 180 Pac. 259; *Wangler B. & S. Metal Works Co.* v. *Industrial Commission*, 287 Ill. 118, 122 N. E. 367; *Smith* v. *So. Surety*, 193 S. W. 204; L. R. A. 1916A, 135, and cases cited in the note.

It is but fair to defendant to state its position is that when Murphy lost his thumb and fingers his compensation for the loss immediately vested by virtue of section 3138, supra, which specifically provides compensation for the loss of a member; that such compensation does not depend for its validity upon an award by the commission, but upon the statute, which unqualifiedly vests the compensation; that in the present case the compensation being absolutely fixed and determined before death, it became, and was, a vested right, and, upon his death immediately vested in his estate.   There would be much force in this contention if it were justified

by a fair and reasonable interpretation of the scope and meaning of the Utah Workmen's Compensation Act. The very title of the act itself seems to preclude the idea that any portion of the fund should inure to the estate of the employé or that of his dependents. The title, as far as material, reads:

"Prescribing the powers and duties of the Industrial Commission of Utah; establishing rates of compensation for personal injuries or deaths sustained by employés in the course of employment; providing methods of insuring the payment of such compensation; creating a State Insurance Fund *for the benefit of injured and the dependents of killed employés;* providing for the administration of such fund by the Industrial Commission of Utah." (Italics ours.)

If we go further and examine the body of the act, we nowhere find a suggestion that the estate of the employé, or any of his dependents, shall succeed to the benefits covered by the act. On the contrary, as far as the dependent is concerned, we find it expressly provided:

"Should any dependent of a deceased employé die or marry during the period covered by such weekly payments, the right of such dependent to compensation under this title shall cease." C. L. U. 1917, § 3141.

Neither this provision, nor any provision similar, is found in the Ohio act from which it is claimed the Utah law was adopted. The fact that the decision in the Ohio case, before referred to, was rendered prior to the enactment of the Utah law is of deep significance. With that decision before it, interpreting the meaning of the Ohio law, the Utah Legislature deliberately enacted the provision above quoted, providing that benefits awarded to sole dependents ceased upon their death. It indicates just what the title of the act above quoted implies, that the benefits of the act, in the event of the employé's death from injury, passes to his dependents, and to them alone. Upon their death the benefits cease. The unpaid balance, if any, remains in the insurance fund instead of vesting in the dependents' estate.

When we come to consider the case of the employé himself we find the same general policy expressly maintained. In the event of his death from injury, within the act, without dependents, it is provided that the employer or insurance

carrier shall, in addition to burial expenses, pay into the
state treasury the sum of $750, unless the employer is in-
sured in the state insurance fund.   C. L. U. 1917, as
amended in subd. 1 of said section, Sess. Laws 1919, page
163.   Thus, it appears, both in the case of the death of a
dependent and of the death of the employé himself, without
dependents, the statute expressly ignores their estate and ex-
cludes them from participating in the fund.

A careful reading of the act induces in our mind a strong
conviction that the primary purpose of the law is (1) to
secure to an injured employé, within the act, compensation
for his injury or loss, to be paid in weekly installments, un-
less commuted, such payments to cease at his death; (2) to
secure to the dependents of a deceased employé, within the
act, the benefits provided therein, such benefits to cease upon
the dependents' death; and, (3) to maintain, preserve, and
keep secure the insurance fund for the above purposes.

It cannot be inferred from any language found in the
Utah law that the insurance fund therein provided should
be drawn upon or used for any other purposes than as a
personal benefit to the classes of persons named in the act
to be conferred upon them while living.   Indeed, there is
something almost incongruous in the idea that the insurance
fund should be susceptible of being lavished upon persons
possibly bearing no relation whatever to the deceased em-
ployé or the business in which he was employed.

The point we make is well stated in a Massachusetts case,
wherein it was contended that, on the death of a dependent,
the benefits awarded vested in her estate.   The Supreme
Judicial Court of that state, in *Murphy's Case,* 224 Mass.
594, 113 N. E. 283, says:

"To hold that the dependent's right to compensation is a vested
right which passes to a legatee by will, and in case of intestacy goes
to the dependent's next of kin, would be to put upon the insurer a
burden not called for by the object which the act was passed to
attain.   In addition, the compensation awarded the dependent would
go in that case to persons altogether outside the class contemplated
by the act.   So construed the act would or might enrich strangers in
place of doing justice to the family and next of kin of an employé

killed in the course of, and so as an incident to, the business in which he was employed."

If the compensation which a deceased employé would have been entitled to had he lived vests in his estate when he dies without dependents, it follows as a corollary indisputable that such compensation is not only the subject of inheritance, but of testamentary disposition as well. As stated by the Massachusetts court, the act so construed might enrich strangers in place of doing justice to the family and next of kin. Such, we believe, would be a perversion of the whole scheme of legislation on this subject, and would defeat the manifest purposes of the law. It is not entirely free from doubt that the Legislature has the power to impose such a burden upon the insurance fund. It cannot be said that it is in any sense a matter of common right. No such obligation rests upon employers at common law, even in cases of the grossest negligence. Let us suppose, for instance, that the freezing of Murphy's thumb and fingers was caused by the inexcusable, indefensible negligence of his employer, and, that, on the same day, he died from sunstroke, or other cause in no wise attributable to the injury to his thumb and fingers, what right at common law would his estate have for such injury? It would have none whatever, for the simple reason that the estate has suffered no loss.

It appears to the writer, viewing the case from every angle of which he is capable, whether from the standpoint of legislative intent, common law, or equity, that the estate of David Murphy, deceased, is not entitled to the sum awarded by the Commission, or any sum whatever. We have found no case in point, or even analogous, in the slightest degree sustaining such award under a statute similar to ours, nor has any such case been called to our attention.

The most plausible reason given by the Commission for the award in question is found in the last paragraph of what is denominated its conclusions:

"The Commission finds and concludes that the estate of David

Murphy, deceased, should recover in this case, *thereby enabling the appointed administrator to pay certain obligations incurred by the deceased, and to defray the necessary funeral expenses.*" (Italics ours.)

The Commission found itself in an unusual and extraordinary predicament. An employé within the industrial act had been injured, and the Commission concluded he was entitled to compensation for the loss. The employé subsequently died from other causes. The act provided for payment of funeral expenses out of the fund only in cases where death results from the injury. The Commission by a circuitous method undertook to do what it could not do directly. It sought by the award to compel the payment of the funeral expenses of deceased out of the fund, notwithstanding his death did not result from the injury. In our opinion the Commission exceeded its jurisdiction.

The award is, therefore, annulled and set aside, and the Commission is directed to dismiss the action.

CORFMAN, C. J., and WEBER and FRICK, JJ., concur.

GIDEON, J. (dissenting). The determinative question presented by this record is concisely stated in the brief of defendant as follows:

"The controlling question being whether or not compensation due deceased on account of the permanent injury suffered, namely, the loss of certain parts of his fingers, became a vested right in his estate upon his death, when death results from other causes than injury."

My learned Associate Mr. Justice THURMAN discusses the case on the theory that such is the decisive question. In the prevailing opinion he says:

"The correctness of the conclusion reached by the Commission that the estate of David Murphy, deceased, is entitled to succeed to the benefits which he would have received had he lived seems to be the only question left for our determination."

The authorities, under workmen's compensation laws such as ours, are to the effect that whenever the statute has fixed a definite amount payable to a particular person the right of such person, or, in the event of his death, his legal representative, to receive the amount so fixed cannot be defeated

70          SUPREME COURT OF UTAH          [Apr.

Heiselt Const. Co. v. Ind. Com., 58 Utah 59

except by some positive provision of the statute terminating such right, or unless the manifest intent and general purpose of the act would be thwarted by enforcing payment. *Munding, State ex rel.* v. *Industrial Com.*, 92 Ohio St. 434, 111 N. E. 299, L. R. A. 1916D, 944, Ann. Cas. 1917D, 1162; *Smith* v. *Kaw Boiler Works Co.*, 104 Kan. 591, 180 Pac. 259; *Wangler B. & S. Metal Works Co.* v. *Industrial Com.*, 287 Ill. 118, 122 N. E. 366; *Darlington* v. *Roscoe*, 1 K. B. 219, 76 L. J. K. B. N. S. 37; *United Collieries* v. *Simpson*, A. C. 383, 78 J. C. P. N. S. 129. The last two cases are cited in notes 95 and 96, L. R. A. 1916A, 135.

The Lord Chancellor, in *United Collieries* v. *Simpson*, supra, in discussing a similar question to the one under consideration, said:

"The act does not require that the dependent himself should make the claim, and I do not see why that right to make the claim should not pass to the executor. * * * No doubt this act was intended to save dependents from the loss they might sustain by being deprived of the support they previously had from the deceased workman, and if the dependents themselves die they require it no longer. And it seems anomalous to enforce payment when no dependent is still living to require support. The act, however, provides a fixed sum, and this must be taken as the statutory provision, whether in the event it is needed or not. Perhaps if this result had been foreseen it might have been guarded against; but that cannot affect the judgment of a court of law."

In *Wangler B. & S. Metal Works Co.* v. *Industrial Com.*, supra, the fourth headnote, which correctly reflects the opinion of the court, reads as follows:

"In view of Workmen's Compensation Act, § 9, and section 19, par. 'g,' the right to compensation, though not a subject of bequest, and though continuing in the dependents of the beneficiary only in manner provided by the act, is a vested right, and can be affected only by the act of the Legislature that gave it."

No case is cited, nor has any been found, holding contrary to the conclusions announced in the foregoing authorities.

Proceeding upon the assumption that the authorities cited support the foregoing general statement of the law, it is advisable to examine the sections of our act to determine whether there is anything except mere deductions to warrant

the conclusion that the terms of the act defeat the right
of the estate of the injured employé to receive the compen-
sation fixed by the act. It will not be, and is not, contended
that the amount of compensation to which the deceased would
have been entitled had he lived was in any way contingent
upon the question of dependency or upon any judgment of
the Commission. It is a definite sum fixed by statute. No
discretion is left in the Commission, save that it may com-
mute the payments and direct the amount to be paid in a
lump sum. Comp. Laws, Utah, 1917, § 3137, being one of
the sections of the Workmen's Compensation Act, as amended
by c. 63, laws Utah, 1919, provides for compensation in cases
of temporary disability, and fixes the amount to be paid. The
right of the claimant in this proceeding is governed by Comp.
Laws, Utah, 1917, § 3138, as amended by c. 63, Laws, Utah,
1919. If the award made by the Commission is not au-
thorized and must therefore be annulled, the reason will have
to be found in this section. The section as amended reads as
follows:

"Where the injury causes partial disability for work, the employé
shall receive, during such disability and for a period of not to exceed
six years beginning on the fourth day of disability, a weekly com-
pensation equal to 60 per cent. of the difference between his average
weekly wages before the accident and the weekly wages he is able to
earn thereafter, but not more than $16.00 a week. In no case shall
the weekly payments continue after the disability ends, or death of
the injured person, and in case the partial disability begins after
a period of total disability the period of total disability shall be de-
ducted from such total period of compensation. In the case of the
following injuries the compensation shall be 60 per cent. of the aver-
age weekly wages, but not more than $16.00 to be paid weekly for
the period stated against such injuries respectively, and shall be in
addition to the compensation hereinbefore provided for temporary
total disability, to wit: For loss of: [Here follows schedule of
amounts to be paid for loss of arm, hand, finger, etc.]"

The provision of the section claimed by counsel for plaintiff
as authority to defeat the award is the sentence found in the
above quotation as follows:

"In no case shall the weekly payments continue after the disabil-
ity ends, or the death of the injured person. *  *  *"

Upon an analysis of that section it is apparent that two

72          SUPREME COURT OF UTAH          [Apr.

Heiselt Const. Co. v. Ind. Com., 58 Utah 59

distinct grounds or rights to compensation are included. The first relates to an injury causing "partial disability *for work.*" (Italics mine.) The sentence last quoted and relied upon to defeat the award at most is merely a proviso or limitation upon the general terms found in the section.

"The proviso is generally introduced by the work 'provided,' but its existence and effect are to be determined rather by its matter and substance than by its form." 36 Cyc. 1162.

The same meaning would have been conveyed if the Legislature, rather than making the limitation a distinct, independent sentence, had used the word "provided" preceding "In no case," etc. Such being the evident intent of the language quoted, no good reason is found in the act why the ordinary rules of construction should not be applied to this language. The usually accepted function of a proviso is to limit preceding general terms used in the statute. *Rawls* v. *Doe,* 23 Ala. 240, 48 Am. Dec. 289; *De Graff* v. *Went,* 164 Ill. 485, 45 N. E. 1075; *In re Bovier's Estate,* 52 Utah, 285, 172 Pac. 683; *Sullivan* v. *Bailey,* 125 Mich. 104, 83 N. W. 996; *Wolf* v. *Bauereis,* 72 Md. 481, 19 Atl. 1045, 8 L. R. A. 680; *United States* v. *Bernays,* 158 Fed. 792, 86 C. C. A. 52.

In *Rawls* v. *Doe,* supra, the court said:

"As the natural and appropriate office of a proviso is to restrain or qualify some preceding matter, we think, upon sound principles of construction, it should be confined to what precedes, unless it is clear that it was intended to apply to subsequent matter."

That rule of construction received the approval of this court in *Re Bovier's Estate,* supra.

An examination of the section quoted proves conclusively that the injuries mentioned in the latter part of that section are in no way related and are in no way kindred to the disabilities or injuries mentioned in the part of the section which precedes the proviso. The latter part of the section deals exclusively with compensation for the loss of an arm, hand, or some other portion of the body specifically mentioned in the schedule. Following that schedule there is no intimation that the compensation provided for therein is to be defeated by the death of the injured person or after the

disability ends.   In fact, we are dealing with a disability
or injury that in the very nature of things can never end;
nevertheless we are applying a defeasance clause that pro-
vides that an award may be defeated by the removal of a
disability.

In my judgment, the decision of the Ohio Supreme Court
in *State* v. *Industrial Com.*, supra, ought to be decisive of
the question here presented.   As stated by Mr. Justice THUR-
MAN, our Workmen's Compensation Act is copied largely
from the law of that state.   The decision in the above case
was rendered in July, 1915, some two years prior to the
enactment of the law in this state.   The statute in that state
fixed a definite amount to be paid to the dependents and the
court held that such became a vested right and descended
to the estate of the one to whom the payments should have
been made had he lived.   In the course of the opinion the
court said:

"If the deceased employé left a widow who was living with him
at the time of his death, the board must find that she was wholly
dependent upon her deceased husband, and must make a certain
award of compensation to her.   The question of dependency and
amount of award in such cases are both determined absolutely by
the statute.   The board can only act formally and must so act."

The amount payable to the deceased under section 3138,
supra, is determined by the statute.   There is no question
of dependency involved.   Neither is there any question of
the loss of wages.   The sole question for the Commission to
determine was, Did the loss of the finger occur in the course
of or arise out of the employment?   If so, the statute fixes
definitely the amount of payment.   The fact of the construc-
tion of the statute by the Ohio court prior to the enactment
of the law in this state must be presumed to have been within
the knowledge of the Legislature at the date of the enact-
ment.   Apparently with a view of defeating the application
of that construction to certain portions or provisions of our
act the Legislature inserted the proviso found at or near the
center of section 3138.

Section 3141 of the act has to do with the apportionment
and payment of benefit in cases of death.   The Legislature,

74          SUPREME COURT OF UTAH          [Apr.

Heiselt Const. Co. v. Ind. Com., 58 Utah 59

apparently to further emphasize its intent that the limitation or defeasance of the award should apply only to certain specific provisions of the statute, and not to the act generally, provided, in the last sentence of said section 3141, as follows:

"Should any dependent of a deceased employé die or marry during the period covered by such weekly payments, the right of such dependent to compensation under this title shall cease."

It will not be argued, I apprehend, that the limitation quoted affects or relates to any compensation other than that provided for in section 3141. Nothing is found in the act except in the limitations in section 3138, supra, and in section 3141, above quoted, that even suggests an intent on the part of the Legislature to defeat a right once vested. It may well be doubted whether the limitation placed upon the award found in section 3141 was intended to defeat an award; that is, to relieve the insurer of the payment of such award. To illustrate: Suppose that a man is killed by accident while in the employ of another, and leaves a widow and minor children. The Commission, in its discretion, determines that so much of the award is payable to the widow and so much for the support of the minor children. The widow marries again. No one would seriously contend that the insurer would thereby be relieved from paying the full amount of the award to the remaining dependents, and yet such would be the logical result if the majority opinion is a correct interpretation of the intent of the Legislature.

I regard the date of the award as wholly immaterial. The right was or was not in existence prior to the death of the deceased. In this case, admittedly, the deceased, in his lifetime, had the right to demand the compensation as fixed by the statute. The award does not make the right. The award is dependent upon the legal right existing before it is made. It is merely the act of the Commission recognizing a right already in existence.

It is suggested in the opinion of the court that it is hardly conceivable of the right passing to the estate unless the right had vested in some one while living. If the right was in any way dependent upon the award that suggestion might

have some weight in the reasoning of the court. The right, however, was not dependent upon the award. The right was created by statute. I have attempted to point out that there is nothing in the statute that defeats the right by reason of the death of the claimant.

My associate who writes the prevailing opinion justifies the order annulling the award not upon a construction of the section quoted, but upon what is designated "a fair and reasonable interpretation of the scope and meaning of the Utah Workmen's Compensation Act." It is argued that the title of the act "seems to preclude the idea that any portion of the fund should inure to the estate of the employé, or that of his dependents." In my judgment, no words are found in the title of the act as quoted in the majority opinion to warrant the conclusion that "the very title of the act itself" precludes "the idea that any portion of the fund should inure to the estate of the" injured "employé." As set forth in the title, the insurance fund is to be administered for the benefit of injured employés and dependents of killed employés. It may reasonably be assumed that the loss of an arm, finger, etc., would be an injury to an employé. What reason, therefore, is there, from the language found in the title to conclude that if the body of the act vests a right in an injured employé by reason of an injury, that such right is defeated by the scope of the act as set forth in the title. The general purpose and scope of our Workmen's Compensation law is not different from the general purpose and scope of such laws in other states or other countries. The authorities of this country and of England are in harmony in holding that courts have "no power to put a limitation upon a right legally given by the Legislature." *Wangler, etc., Co.* v. *Ind. Com.*, supra.

Neither, in my judgment, is the question presented by this record controlled or concluded by the contention that the underlying purpose of the act is compensation to dependents. It may be admitted that compensation in death cases is not payable except there be dependents at the time of the death. In other words, no rights vest for the simple reason that

there is no one in whom such rights could vest. Granted, as it is in this case, that all the conditions had been fulfilled which vested the right and made the compensation payable, then the only question left is, what is there in the act to defeat the vested right? The error of the majority opinion, in my judgment, is that it fails to recognize the fact that a right had ever vested in the deceased. It is stated by the court that—

"It cannot be inferred from any language found in the Utah law, that the insurance fund therein provided should be drawn upon or used for any other purpose than as a personal benefit to the class of persons named in the act to be conferred upon them while living."

My answer to that is that the conclusion is beside the question. The question here is, Is there anything in the Utah law defeating a right once vested in the deceased? If the right had vested, then it requires no provision of the statute to make the necessary deduction or inference. The law itself protects such vested right, unless it is defeated by some positive statute.

The eighth headnote to *Wangler, etc., Co.* v. *Ind. Com.,* supra, is as follows:

"Courts have no power to put a limitation upon a right legally given by the Legislature, unless by a clear construction of the act it can be said that such limitation was in furtherance of the legislative intent."

The general purposes sought to be accomplished by the act do not in any way, in my judgment, conflict with the general rule of law that a definite, positive right fixed by the act cannot be defeated merely by the death of the party intended to receive the benefits stipulated in such law. If the right vested and became fixed in the deceased, it follows that his legal representative is authorized to apply for and collect the amount for the benefit of the estate of such deceased.

I therefore dissent.