PACIFIC STATES CAST IRON PIPE CO.
v. INDUSTRIAL COMMISSION et al

No. 7289. Decided May 16, 1950. (218 P.2d., 970).

See 71 C. J., Workmen's Compensation Acts Sec. 391. Workmen's Compensation, time for making claim under statutes for, see note, 108 A.L.R. 16. See also, 58 Am. Jur. 846.

*Stephens, Brayton & Lowe,* Salt Lake City, for plaintiff.
*Clinton D. Vernon,* Attorney General; *Andrew John Brennan,* Assistant Attorney General; *Dwight L. King, Wayne L. Black,* Salt Lake City, for defendants.

LATIMER, Justice.

This is a proceeding in certiorari by the Pacific States Cast Iron Pipe Company to review an award by the Industrial Commission of the State of Utah to Ida D. Horrocks, and her five minor children, dependents of LeRoy D. Horrocks, deceased.

LeRoy D. Horrocks, deceased, was first employed by the plaintiff company in its plant at Ironton, Utah, in 1927. He left its employment in 1929, but returned in 1932 and worked continuously for plaintiff until January 25, 1946. From 1932 until about 1935 he was employed in the pipe cleaning department. In 1935 he was transferred to the shipping department, where he worked until 1944, when he

was again transferred back to the pipe cleaning department. He continued working in the latter department until January 25, 1946. His work in that department consisted of grinding pipes and this process caused the presence of silicon dioxide dust, to which he was exposed. The shipping department was in the open air, but was next to the cleaning department, and on occasions, while performing duties in the shipping department, deceased had to go into the cleaning department, which further exposed him to the particles of dust.

On January 25, 1946, Horrocks suffered the first of a series of severe hemorrhages from his lungs, and as a result was forced to leave his work. Thereafter he never returned to employment. On March 6, 1946, he filed a claim with the Industrial Commission of the State of Utah for compensation for total disability resulting from silicosis. The plaintiff employer denied liability under the Occupational Disease Disability Act, U. C. A. 1943, 42—1a —1 et seq., claiming that Horrocks was not disabled because of silicosis and that, even assuming that he had contracted such disease, he had been exposed to dust only 16 months during the ten years prior to January 26, 1946, which would not bring him within the coverage of the statute. Two hearings were held on Horrock's claim, one on July 16, 1947, and the second on September 10, 1947. The long delay in setting the action down for the first hearing was largely brought about by the fact that the available evidence seemed to indicate that he was suffering from diseases other than silicosis and that he and the Commission were trying to determine the real source of his trouble. The medical reports the Commission received during this period, while somewhat conflicting, seemed to indicate that Horrocks was afflicted with only a mild type of nondisabling silicosis. The evidence produced at the first hearing (which was 16 months after the claim was filed) concerning the cause of his disability did not remove the

uncertainty and doubtfulness so further clinical and medical reports and examinations were requested. In December of 1947, the Commission was informed by a physician who was considered an authority on silicosis, and who had been consulted on the case, that a further and more thorough examination had been made of Horrocks and that he was then suffering from silicosis, chronic nephritis, and hypertension. The commission, not being satisfied as to the disabling effect of the different ailments mentioned and at the request of the deceased's counsel, requested another report from the doctor, which report was to show the estimated percentage of the disability suffered by deceased due to silicosis. On January 2, 1948, the doctor replied that approximately 25 per cent of the disability suffered by Horrocks was caused by silicosis. A further examination was requested, but as to who made the request for this does not appear. On January 14, 1948, Mrs. Horrocks informed deceased's attorneys that her husband had been very seriously ill and was, therefore, unable to submit to the examination suggested by the commission. His attorneys requested that the commission delay final disposition of the case until such time as Mr. Horrocks recuperated and was able to submit to the examination suggested by the commission. On February 10, 1948, the applicant died. On July 16, 1948, his widow filed a claim with the commission for death benefits for herself and minor children. There were, therefore, two separate and distinct claims pending before the Commission, as we have held that the death claim of dependants is a separate and distinct cause of action from the one running to deceased for his injuries. *Halling v. Industrial Commission*, 71 Utah 112, 263 P. 78. This is of importance for the reason that the conditions imposed to extend the limitations period are requirements that apply to Horrock's claim and under the terms of the statute his dependents cannot obtain the benefits of the extension unless his claim has ripened into an award for, or payments of compensation.

The findings of the Commission fuse and confuse both claims, but those furnished us on the death claim state that:

"the decedent was employed by the plaintiff during the period between 1932 and January 25, 1946; that during his employment he worked in the cleaning department where there was considerable dust due to the grinding of pipes; that on January 25, 1946, the decedent had to leave his work because he was physically unable to work; that on February 10, 1948, he died of chronic bilateral glomerulonephritis with contributory pulmonary silicosis; and that the silicosis contributed to the decedent's death to the extent of 30 percent."

Upon these findings, the dependent widow was awarded hospital and medical expenses, $250.00 burial expenses and $990.00 compensation.

The plaintiff employer protests the award made by the commission principally on the grounds that the widow's claim in the death case is barred by the provisions of Sec. 42—1a—13 (b), (3), U. C. A. 1943, which provides as follows:

"(b) There is imposed upon every employer a liability for the payment of compensation to the dependents of every employee in cases where death results from an occupational disease, subject to the following conditions:

\* \* \* \* \* \*

"(3) No compensation shall be paid for death from silicosis unless death results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed, *except in those cases where death results during a period of continuous total disability from silicosis for which compensation has been paid or awarded, and in such cases compensation shall be paid if such death results within five years from the last day upon which the employee actually worked for the employer against whom compensation is claimed.*" (Italics added.)

There is no contention that deceased died within two years from his last day of employment, so the issues are narrowed to the question of whether the facts bring the dependents of deceased within the five-year provisions of the statute above quoted. The italicized portion of the above-quoted section of the statute sets out two requirements for extending the period of

limitation, both of which must be met before the award by the commission can be upheld. These are necessarily established in deceased's cause, but they also become conditions precedent to the extension of the limitation period in the death case. They are: (1) a period of continuous total disability from silicosis, and (2) a payment or award of compensation for the total disability. We believe the first requirement of the statute is fulfilled, although the commission ignores the issue in its findings and decision. If this was the only irregularity in the proceedings, the matter would be referred back to the commission for further consideration. However, our holding on the failure to meet the second requirement disposes of the action and makes a reference back to the commission unnecessary.

The evidence to sustain our conclusion on the first requirement can be gleaned from the evidence of Drs. Richards and Orton and the documents on file in the action. This evidence compels a finding that deceased was suffering from an occupational disease at the time he left his employment or immediately thereafter; that he was suffering from ailments other than silicosis; that these were superimposed upon the latter disease which resulted in deceased being totally and permanently disabled from the time he left his employment until the time he died; that silicosis contributed twenty-five per cent to this total disablement. From these facts it becomes apparent that had the commission acted prior to Horrock's death it would have been required to find that he was totally and permanently disabled as a result of having contracted silicosis while employed by plaintiff company.

The failure to meet the second requirement is, however, fatal to Mrs. Horrocks' right to recover in her cause.

The question of whether the commission may make an award of compensation after the death of an employee for personal injuries suffered before death has been touched

on in *Heiselt Construction Company et al.* v. *Industrial Commission of Utah,* 58 Utah 59, 197 P. 589, 15 A. L. R. 799; and in *Parker* v. *Industrial Commission et al.,* 87 Utah 468, 50 P. 2d 278. This court, in those cases, considered the survival of workmen's compensation claims after the death of the claimant, and distinguished between "accrued" and "unaccrued" payments in the decisions.

In the *Heiselt Construction Company* case, supra, one David Murphy, an employee of the Heiselt Construction Company, froze his fingers on January 20, 1920, in the course of his employment. He was subsequently awarded medical and hospital expenses and temporary partial disability compensation. Murphy died on March 28, 1920, from causes not connected with or resulting from said injuries. At the time of his death a claim was pending before the commission for permanent partial disability, since his injury had necessitated the amputation of his fingers. His administrator claimed the amount allocated by statute for the permanent partial disability and the commission made an award in his favor. This court vacated the award. It was contended by the employer in that case that the compensation to which Murphy was entitled for the loss of his digits was intended only as compensation for the loss of any wages he might have earned in the future if he had not been injured; and that the right to an award for permanent partial disability did not become vested before death and, therefore, did not pass to the legal representative. Defendant contended that when Murphy lost his thumb and fingers his compensation for the loss immediately vested by virtue of the section of the statute which specifically provided compensation for the loss of a member; that such compensation did not depend for its validity upon an award by the commission, but upon the statute, which immediately vests the right to compensation in the injured employee; that since the compensation was fixed and determined before death, it be-

came, and was, a vested right, upon which his death vested in his estate.

This court, however, rejected the employee's contention saying that the right to compensation was cut off by the death of the employee and did not pass to his representative. Mr. Justice THURMAN, speaking for the court said:

"In this case no award was ever made to a person while living, nor was there a person living to whom it could have been made. It was not made until December 20, 1920, nearly nine months subsequent to Murphy's death. This distinction may not be entitled to serious consideration. The writer has no desire to advance a suggestion by way of argument that is wholly devoid of merit. The point, however, intended to be made by the distinction referred to is, if the right does not vest until the award is made, then, in the present case, there was no vested right because there was no one living in whom it could vest. We can hardly conceive of a right passing to an estate unless the right had vested in some one while living." [58 Utah 59, 197 P. 591]

In *Parker* v. *Industrial Commission et al*, supra, Mr. Justice WOLFE, speaking for the court, distinguished those cases where compensation had been awarded and those cases where no award had been made. In that case an employee was injured in the course of his employment and an order was made and entered by the commission allowing his compensation beginning September 27, 1933, up to the time of the award, to-wit: November 30, 1934. All accrued payments were to be paid in a lump sum. The employee died on December 2, 1934, before any check had been issued to him. His widow survived him and as representative of his estate requested payment of the accrued compensation over the period beginning September 27, 1933, and ending December 2, 1934, in regard to which the award had been made by the commission up to November 30, 1934. The commission denied the request, and this court held that the commission was in error. Mr. Justice WOLFE said:

"The payment of compensation is, in a sense, a disability wage, and is earned by operation of law. The conditions making it payable all pertaining, the

employee is entitled to it just as much as he is entitled to wages earned by contract. As disability payments are 'earned,' they become vested, and if the employee dies before they are paid, his estate is entitled to them."

The court then distinguishes the Heiselt Construction Company case, supra, saying that there the question was as to whether "unaccrued" payments for partial permanent disability passed to the estate. The court states:

"In the following cases it was held that the unpaid balance of compensation which would have been payable under the award after the date of the death of the employee had he lived for the loss of a member such as an eye, or a leg, or an arm, was not payable to the estate of such employee: *United States Fidelity & Guaranty Co.* v. *Salser et al.*, Tex. Civ. App., 224 S. W. 557; *Wozneak* v. *Buffalo Gas Co.*, 175 App. Div. 268, 161 N. Y. S. 675, approved in *Casmey* v. *George Parks' Sons Co.*, 229 N. Y. 623, 129 N. E. 933; cases contained in note 15 A. L. R. 821; *Heiselt Construction Co.* v. *Industrial Commission*, 58 Utah 59, 197 P. 589, 15 A. L. R. 799.

"In all of these cases, including the Heiselt Construction Co. Case, the question was as to whether "unaccrued" payments for partial permanent disability passed to the estate. The question did not involve payments which had accrued for temporary total disability. By use of the word 'unaccrued' in the case of a permanent partial disability, we do not mean to imply that where the statute gives a fixed sum for the loss of a member, that it necessarily accrues weekly rather than at once by operation of law. We use the term 'unaccrued' in the sense of designating that proportion of the whole compensation for the permanent partial disability as the period after death bears to the whole period. In the Heiselt Construction Co. Case the injured employee had been paid at the time of his death for nine weeks, or $144, which was for the period of temporary total disability. No award had been made for permanent partial disability for the loss of parts of four fingers until after the death of the decedent. It is clear the court in that case did not intend to lay down any rule to the effect that compensation payments accrued [at] the time of the death would not pass to the estate."

We believe the facts of this case more nearly fit the rule announced in the Heiselt case. Here, there are no accrued payments, the commission having made no award of compensation to the deceased for total disability. Since no award had been made prior to the death of the employee and since no determination of causation or the weekly amounts to be paid had been made before that time, it would appear that no payments could have accrued. The right to compensation for injuries is a right personal

to the employee and unless payments have accrued or a determination has been made by the commission there is no right to which the personal representative or a dependent can succeed. The Heiselt case, supra, was decided in 1921, and the occupational disease statute was enacted in 1941. It would, therefore, appear that had the legislature when it passed the latter act, intended to modify the rule that unaccrued payments would vest rights in dependents or personal representatives, it would have provided for tolling the limitation period by filing of a claim so that an award could be made after death. Some of the states have provisions in their occupational disease statutes which prevent the statute from running if a claim has been filed by the employee. Had our legislature intended to do so it would have been a relatively easy prescription to express.

We believe the principles delineated by the Heiselt and Parker cases should be reaffirmed and that unless an employee has reduced his claim to an award or has been receiving compensation his cause of action for injuries does not pass to either his personal representative or his dependents. Such being the case, the commission does not have jurisdiction to make an after-death award so as to prevent a limitation period from running.

While neither of the two cited cases are on all fours with the present action they point out the difference between enforcing a right that is vested prior to death and enforcing one that has not become vested. In the present action, we are at least one step removed from both those cases because even if the commission could now proceed to make an award, we would be required to hold that the payments would revert back to the time the employment terminated and that the dependents could proceed to enforce the right without the substitution of a personal representative and in an entirely different cause.

We have not overlooked the provisions of Sec. 42—1—72, U. C. A. 1943, which permits the commission to retain jurisdiction of a cause once it is obtained. There can be no question but that the commission obtained jurisdiction to proceed with an adjudication of Horrocks' claim for his personal injuries but this does not permit us to extend the doctrine of continuing jurisdiction to cover the present claim. Mrs. Horrocks' action for compensation is an independent right of recovery which does not come into existence until the death of her husband and her rights should not be confounded with those running to Horrocks or his personal representative, except to the extent made necessary by the statute. Under our previous decisions the identity of the two must be maintained and the actions of the employee, employer and the commision can only be carried over from one to the other if expressly provided for by the legislature. A carry-over provision permiting jurisdiction of one action to extend to another has not been prescribed for in our statutes and so the pendency of the deceased's cause of action would not prevent the statute from running against the present claim.

We are mindful of the hardship imposed in this case, but even so we are powerless to re-write the statute or escape its effect unless the plaintiff can be charged with acts which would estop it from relying on the terms of the statute. Even though a long period of time elapsed between the filing of the claim and the death of Horrocks we find no evidence in this record which would permit the doctrine of estoppel to be used against the employer. The period of time was lengthened because of the combined efforts of the deceased, the employer, and the commission to find out the true cause of deceased's disability and whether or not he had a compensable injury. During the early portion of the time the evidence indicated that deceased was suffering from diseases which were non-

compensable and that while silicosis was present in his lungs, the type was mild and non-disabling. It was only after extensive examinations by disinterested medical experts that it was determined silicosis was a contributing factor. The acts of the deceased and his counsel contributed to the delay in substantially the same degree as did the acts of the employer and the commission and accordingly a plea of estoppel cannot be sustained against the plaintiff.

The award is vacated.

PRATT, C. J., concurs.

WOLFE, Justice (concurring in the results).

I concur in the results on the ground that the words in Sec. 42—1a—13 (b) (3), U. C. A. 1943, reading

"* * * except in those cases where death results during a period of continuous total disability from silicosis *for which compensation has been paid or awarded* * *"

mean that the condition of having been paid or awarded for the total permanent disability from silicosis must have already happened at the time of the death. That condition was not met in this case. This makes it unnecessary to determine whether, absent these words, there would have vested in the decedent during his life, compensation due to him for total disability from silicosis, although none had been paid nor awarded. And it makes it unnecessary to determine whether the Heiselt case was correctly decided when it held that compensation for the loss of a bodily member, definitely granted by statute, accrues under an award or by payment of the compensation; or whether it accrues by virtue of the statute. My inclination is to favor the view that in cases, at least where the extent of disability is not definite and not fixed by an award nor recognized by evidence of payment, the amounts must accrue *under an award* or its equivalent, whatever the equiv-

alent may be, so as to pass to the estate as vested compensation accrued during the lifetime. In short, at least as to compensation not fixed in amount or extent, as in the case of a specific payment for the loss of a part of the body, there is no accrual of compensation during the lifetime of the injured person until it has accrued under an award or its equivalent. But I need not determine that question in this case because of the reason given above.

WADE, Justice (dissenting).

I cannot agree that the provisions of Sec. 42—1a—13 (b) (3), U. C. A. 1943, bars the making of an award to the widow and dependents of the deceased employee under the facts of this case.

LeRoy D. Horrocks, the decedent employee, had on March 6, 1946, during his lifetime, filed with the commission a claim for total disability resulting from silicosis. The prevailing opinion states that under the facts presented to the commission it could well have made an award to the claimant for such disability, but because it failed to do so within the lifetime of the claimant the commission is now barred from making an award to his dependents. ·

When LeRoy D. Horrocks left the employee of the plaintiff he was suffering from total disability resulting from silicosis and as of that date became entitled to compensation, and although he in due time filed his claim for such compensation, due to factors beyond his control, no award or payment was made during his lifetime. The fact that the commission failed to make an award before he died did not affect his right to the compensation. The right became vested when he became totally disabled because of silicosis and could no longer work. Although in *Parker* v. *Industrial Commission, et al.,* 86 Utah 468, 50 P. 2d 278, we did not expressly overrule the case of *Heiselt Construction Company* v. *Industrial Comm.,* 58 Utah 59, 197 P.

589, 15 A. L. R. 799, we explained that case by saying that the award which was made to the personal representative after the death of the employee was for payments which would have become due had the employee lived and were not such as to which he had already become entitled, but held that the employee had a vested right as to payments to which he had already become entitled. In the instant case decedent commenced earning his disability wage when he became unable to work and the rights to those payments became vested during his lifetime. The failure of the commission to order those payments did not change those rights. The employee had done everything required of him to set the machinery of the commission in action to aid him in the collection of those payments. Under such a state of facts that which should have been done should be considered as having been done for the purposes of determining whether the conditions imposed in Sec. 42—1a —13 (b) (3) have been complied with. To hold that whether a dependent would be entitled to an award depends upon the action or inaction of the commission, even though it should have acted, would make such rights wholly dependent upon the commission rather than the law, a result which the legislature could not possibly have intended.

The prevailing opinion follows strictly the wording of Section 42—1a—13 (b) (3), U. C. A. 1943, and holds that decedent's dependents are not entitled to an award since no compensation was paid or awarded to him during his lifetime. But in this kind of case we should look to the purpose of the provision rather than hold too strictly to its express wording. The purpose of this provision was to allow the dependents of such decedent to recover compensation where the decedent was entitled to and claimed compensation during his lifetime as a result of total disability from silicosis. The legislature obviously overlooked the possibility here presented that a person might do all in his power to obtain compensation and even though he were

entitled thereto, through circumstances beyond his control, he might not obtain an award or payment before his death. Under such conditions, I think the case comes under the spirit and intention of the act if not strictly within its wording. *In Union Portland Cement Co.* v. *Tax Comm.*, 110 Utah 152, 176 P. 2d 879; *Utah Light & Traction Co.* v. *State Tax Comm.*, 92 Utah 404, 68 P. 2d 759; *Spangler* v. *Corless*, 61 Utah 88, 211 P. 692, 28 A. L. R. 72, this court went a long way to read into a statute the spirit and intention of the act, although the result was directly contrary to its express wording. See also *Masich* v. *United States Smelting, Refining & Mining Co.*, 113 Utah, 101; 191 P. 2d 612 and *Geneva Steel Co.* v. *Tax Comm.*, 116 Utah 170; 209 P. 2d 208; Unless we are to have consistently recurring cases of great hardship and injustice like this one, we must construe statutes in the light of their purpose and the objects to be accomplished thereby, and this should equally be true where the dependents of those who have given their lives to industry are involved as well as in cases where a great industry stands to lose by a strict construction of the statute.

McDONOUGH, J., not participating.