## UNION PORTLAND CEMENT CO. v. STATE TAX COMMISSION.

No. 6884.  Decided February 6, 1947.  (176 P. 2d 879.)

For former opinion see 110 Utah 135, 170 P. 2d 164.

*Judd, Ray, Quinney & Nebeker,* of Salt Lake City, for plaintiff.

*Wayne Christofferson* and *Clarence C. Neslen,* both of Salt Lake City, for defendant.

*Critchlow & Critchlow, Dey, Hoppaugh, Mark & Johnson, George Jay Gibson, Ingebretsen, Ray, Rawlins & Christensen, H. B. Thompson, A. U. Miner, M. J. Bronson, Albert R. Bowen, William M. McCrea, S. N. Cornwall, Irvin L. Stephenson, Bryan P. Leverich, Clair M. Senior, Beverly S. Clendenin,* and *Calvin Behle,* all of Salt Lake City, amici curiæ.

WOLFE, Justice.

We granted a rehearing in this case to reconsider the relationship between the Sales and Use Tax Acts, Utah Code 1943, 80-15-1 et seq., 80-16-1 et seq., and the effect on the use tax of exemptions contained in the Sales Tax Act.

In our original opinion in this case, which is reported at 110 Utah 135, 170 P. 2d 164, we held that the Use Tax Act is separate and distinct from the Sales Tax Act and that the Use Tax Act is broad enough to cover all tangible personal property which is used, stored or consumed in this state unless such property is expressly excepted by exemptions contained in the Use Tax Act itself. We noted that one of the exemptions to the use tax was "property, the gross receipts from the sale of which are required to be included in the measure of the" sales tax. We held that the amendment to the Sales Tax Act which exempted the sale of coal for industrial use from the sales tax had the effect of making such coal subject to the use tax because the gross receipts from the sale of such coal were then not required to be included in the measure of the sales tax, the Use Tax Act by its terms having a plenary application to all property used, stored or consumed in this state unless exempted by provisions in the Use Tax Act itself.

The holding, in effect, is that specific exemptions in the sales tax remove those items from the sales tax but make them subject to the use tax. As the sales and use taxes are each 2% of the purchase price our holding makes specific exemptions to the sales tax of practically no effect unless the identical exemptions are also in the Use Tax Act. At the original hearing we did not have before us matters which on the rehearing are presented by stipulations. These matters bear on the intention of the legislature and serve to widen our consideration beyond the logical effect of the wording of the two acts.

In this opinion and for the purposes of this opinion only we use the terms "industrial coal" and "coal for industrial

use" as meaning "coal other than sold or furnished for domestic or commercial consumption."

The sales tax was adopted in 1933. During the first three years of the administration of Sales Tax Act, the Tax Commission discovered certain substantive faults in the act. The Commission in its Third Biennial Report (1935-1936) to the governor and the legislature reported as follows:

"There are certain objections and problems that have been raised in the administration of this tax, namely:

*   *   *   *   *   *

"2. The tax cannot be imposed on transactions involving interstate commerce.

*   *   *   *   *   *

"The second item, that of interstate commerce, is the more serious as it applies to revenue, administration and the effect upon the Utah merchant. States are prohibited by the Federal Constitution from regulating commerce between states, and as a result, a sales tax cannot be imposed on sales made in interstate commerce. Such sales may be classified in two groups; sales of goods coming into the state, and sales of goods going outside the State. It is this first group which results in competition with, and discrimination against, the Utah merchant and causes the greatest administrative difficulties and probably affects the revenue more than the second group. Other states having sales tax laws have enacted as a supplement to their sales tax, a law known as a 'Use Tax' which has the effect of imposing a tax on goods coming into the state for use and upon which the state sales tax has not been paid. Such a law would tax not only this group of interstate commerce transactions, but would also apply to goods which the user had gone into another state to purchase. As the sales tax in the State of Idaho is no longer in effect, we no doubt will have the situation of Utah residents living close to the Idaho State line going into Idaho where no sales tax is charged, to make purchases rather than trading with the Utah merchants. The adoption of a 'Use Tax' would impose a tax on the purchase price of such goods when they were brought into this State for use or consumption   *   *   *   If this state is to continue the sales tax as a part of its revenue system, the adoption of a 'Use Tax' statute should be seriously considered.   *   *   *"
(Pp. 53, 54, Third Biennial Report of the Tax Commission of Utah.)

As a result of the Tax Commission's recommendation, the legislature in 1937 enacted the Use Tax Act. The Use

Tax Act was not, in form, an amendment to the Sales Tax Act but was set up as a separate Chapter (16 of Title 80).

The Use Tax Act contained certain specific exemptions thereto. Section 80-16-4. However, not included in those exemptions was property purchased from religious, charitable and eleemosynary institutions though the sale of such property was expressly exempt from the sales tax.

The same legislature which enacted the use tax also amended the Sales Tax Act to exempt therefrom newspapers and newspaper subscriptions. Such property is not included within the exemptions in the Use Tax Act.

Since 1937 other amendments to the Sales Tax Act have exempted sales to charitable and religious institutions and various other sales. But the Use Tax Act has not been expressly amended to exempt the use of such property from its operation nor do the express exemptions theretofore existing exempt the use of such property.

The Tax Commission noted the uncertainty that existed because the Use Tax Act was not correspondingly amended each time the Sales Tax Act was changed. The commission administered the two laws as though they were one and when the sale of certain property was exempted from the sales tax it considered the use of that property was also exempted from the use tax. The Commission reported its construction of the two acts to the legislature. In its Fourth Biennial Report (1937-1939) it said:

"The use tax should also be changed so as to correlate with the sales tax, and the same specific exemptions allowed in the sales tax, such as motor fuels, newspapers, isolated and occasional sales and sales by farmers and producers, should be written into the Use Tax Act. Again by regulation, we have provided that such exemptions also apply to the use tax, but in order to support this regulation, the law should be changed * * *." (P. 44, Fourth Biennial Report of the Tax Commission of Utah.)

The legislature did not change the Use Tax Act as the commission recommended. One of two conclusions can be drawn from this non-action. Either the legislature did not intend the property exempted from the sales tax to be ex-

empted from the use tax, or the legislature intended the specific exemptions to the sales tax to also be exemptions to the use tax and did not consider amendments necessary to carry out that intent as the Tax Commission was already applying the law as so intended.

The second of the two conclusions is the reasonable and correct one.

The legislature in 1939 was fully informed by the Tax Commission, which is the administrative agency charged with the administration of the Use and Sales Tax Acts, that exemptions to the sales tax were being applied to the use tax but that there was some question as to the statutory basis for such application. In all probability if the legislature had not approved of such application it would have clarified the law which would have required the Tax Commission to change its interpretation. However, the legislature being fully informed of the interpretation for some seven years not only did not see fit to clarify the law but during that seven year period added other exemptions to the sales tax without expressly adding those same exemptions to the Use Tax Act. Unless the Tax Commission's interpretation is correct, such additional exemptions to the sales tax would be practically meaningless because those exemptions would remove the sales tax only to make the use tax applicable. When an exemption from a two per cent tax was granted by one act, the other act would ipso facto pick up the items exempt and they would be taxable. It is difficult to see what purpose the legislature would accomplish by a mere shift from the operation of the sales tax to an operation of the use tax by the aimless method of exempting certain articles from one act only to have them picked up as taxable items under another act yielding exactly the same revenue.

From the legislative history of the Sales and Use Tax Acts and from the administrative interpretations thereof made with the knowledge and implied approval of the legislature, it follows rather conclusively that the ■ Sales and Use Tax Acts are to be considered as correlative and complementary and that, as far as exemptions

are concerned, legislative created specific exemptions from the sales tax are also to be treated as exemptions from the use tax.

In the case at bar an amendment to the Sales Tax Act became effective March 18, 1943 which, in effect, exempted sales of industrial coal from the sales tax. Section 80-15-4, U. C. A., 1943 as amended by Laws of Utah ■ 1943, Chapter 93. From our interpretation of the effect of exemptions from the sales tax it follows that industrial coal has been exempted from both the sales and use taxes since March 18, 1943.

The Tax Commission contends that since this coal was sold in Wyoming the Utah sales tax never did apply to it and therefore the exemption of industrial coal from the sales tax does not exempt the use of this coal from the use tax. Such an interpretation would discriminate against coal bought out of the state in favor of coal purchased in the state. The use tax was not intended to create a discrimination against out-of-state merchants in favor of Utah merchants. Rather it was passed, as indicated by the above quotation from the Third Biennial Report of the Tax Commission, to remove the theretofore existing discrimination against local merchants in favor of out-of-state merchants which discrimination arose from the operation of the sales tax. The Tax Commission itself clearly stated the purpose of the use tax on page 39 of its Fourth Biennial Report. It said:

"The Use Tax Act was passed by the last legislature and became effective July 1, 1937, This Act was passed as a companion measure to the sales tax and acts as a complement to it.

"The purpose of the tax was to overcome a discrimination found to exist in the sales tax, * * * caused by the inability to impose the sales tax upon transactions in interstate commerce * * * The tax applies primarily to goods shipped into the State in interstate commerce and to purchases made outside of the State for use within the State, and in this manner acts as a protection and equalization to the Utah merchant against out-of-state merchants who may be selling to Utah purchasers."

Legislative-created specific exemptions from the sales tax are also exemptions to the use tax regardless of where the sale of the property involved took place.

What is said in this opinion does not apply to the exemption in the Sales Tax Act of

"sales which the state of Utah is prohibited from taxing under the constitution or laws of the United States, or of the State of Utah".

Exemptions from the sales tax which may arise because of paramount law are not in the same class with exemptions created by the Utah Legislature. In reality such are not exemptions created by the act. Something which is not taxable by paramount law cannot be said to be exempt by force of a provision which purports to create an exemption. Such provision is in effect, only a recognition of the fact that such items are not reachable by the law in which the purported exemption appears. But treating it as an exemption, when the legislature expressly excepts sales already exempt by paramount law it does not evidence an intent that the use of the property the sale of which is thus exempt should not be subject to the use tax. As before stated, the obvious purpose of the Use Tax Act was to impose a tax on the use in this state of property the sale of which, because that sale took place outside the state, was beyond the reach of the Utah Sales Tax Act. But when the legislature by the specific language of the Sales Tax Act carves out of those sales which it has power to tax specific sales and exempts them from the sales tax it clearly evidences a desire to exempt the property so sold from the 2% tax, whether imposed by the Use or Sales Tax Act. To hold otherwise would practically nullify the obvious legislative intent.

The assessment of the use tax on coal used industrially by the plaintiff after March 18, 1943, was invalid.

The case is remanded to the Tax Commission for further proceedings in accordance with our original opinion as modified by this opinion.

No costs allowed.

McDONOUGH, C. J., and PRATT, WADE, and LATIMER, JJ., concur.