# GENEVA STEEL CO. v. STATE TAX COMMISSION.

No. 7236.   Decided August 2, 1949.   (209 P. 2d 208.)

See 53 C. J. S., Licenses, sec. 30.  Construction of statutes as aided by administrative interpretations, see note, 174 A. L. R. 989.  See, also, 50 Am. Jur. 317.

C. C. *Parsons, William M. McCrea, A. D. Moffat, Calvin A. Behle,* Salt Lake City, for plaintiff.

G. *Hal Taylor,* Salt Lake City, for defendant.

WOLFE, Justice.

Certiorari to review a deficiency use tax assessment made by the defendant, State Tax Commission, against the plaintiff, Geneva Steel Corporation. The basic facts are almost entirely stipulated and therefore not in dispute. On June 19, 1946, the Reconstruction Finance Corporation, acting by and through the War Assets Administrator, entered into a contract of sale with the Geneva Steel Corporation, a wholy-owned subsidiary of the United States Steel Corporation, whereby the former sold to the latter for $40,000,000 the Geneva Steel Plant at Geneva, Utah, the Geneva Coal Mine and Interchange Yard near Columbia, Utah, the Keigley Quarry at Payson, Utah, and the Iron Mountain Ore Mine Facilities at Cedar City, Utah, all of which will hereinafter be referred to collectively as the Geneva Steel Plant. In addition, the plaintiff purchased certain inventories of the plant, all personal property, for $7,175,345. The various component parts of the steel plant were conveyed by separate instruments: the real estate by four deeds, and the tangible personal property involved in the sale of the plant as well as the inventories by bills of sale. The Reconstruction Finance Corporation and the War Assets Administrator operated through their main offices in Washington D. C. in effecting the sale, but the contract was executed by the plaintiff in Utah. The plant was constructed by the United States, acting by and through the Defense

Plant Corporation, whose assets and rights have been succeeded to by the Reconstruction Finance Corporation, for the purpose of manufacturing iron and steel products essential in the prosecution of World War II. The plaintiff operated the plant as a contractor for the Reconstruction Finance Corporation up until the time of the sale. After the close of the war, the plant was declared surplus property and the War Assets Administrator accepted the bid of the United States Steel Corporation for its purchase.

On February 25, 1948, the defendant levied a deficiency use tax assessment against the plaintiff in the sum of $423,526.87, consisting of a tax of $385,550.18 and interest thereon in the sum of $37,976.69. The basis for the deficiency assessment was the claim of the defendant that a use tax at the rate of 2% became due at the time the plaintiff purchased the plant and upon the sale of the tangible personal property comprised in the sale of the plant and upon a certain portion of the inventories. Because the lump sum purchase price for the plant had not. been broken down at the time of the sale by the parties as to what amount was for the real property and what amount was for the personal property, nor as between its four principal physical locations in Utah, the defendant computed the tax due on an allocation made by the plaintiff on December 12, 1946, when it determined how much of the $40,000,000 was to be considered as payment for the real property for the purpose of affixing internal revenue stamps to the four deeds of conveyance.

The War Assets Administration in making sales in Utah of surplus personal property owned by the United States, none of which were in connection with sales of integrated businesses, has collected from the purchasers an additional sum denominated a 2% sales tax which it has remitted to the Tax Commission. However, the War Assets Administration has not been licensed by the State of Utah as a "retailer" under the sales or use tax acts. In connection with making sales, it does not use sales tokens or file the reports required

by licensees, but collects and remits the "tax" in accordance with its own policies and those of the Federal Government. In the sale of the Geneva Steel Plant and the inventories, as well as in the sales of other intergrated businesses in Utah consisting of both real and personal property, the Regional Director of the War Assets Administration in Utah was advised by the War Assets Administrator not to collect from the purchaser any additional sum, but to report the facts in connection with such transactions to the state taxing authorities.

The plaintiff contends, among other things, that the sale of the Geneva Steel Plant and the inventories is not subject to the use tax because it was an "isolated or occasional sale," and hence not a "retail sale" upon which there is a tax imposed. The statute under which the defendant imposed the use tax upon the plaintiff is as follows:

### 80-16-3, Utah Code Annotated 1943.

"There is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal property purchased on or after July 1, 1937, for storage, use or other consumption in this state at the rate of two per cent of the sales price of such property.

"Every person storing, using, or otherwise consuming in this state tangible personal property purchased shall be liable for the tax imposed by this act, and the liability shall not be extinguished until the tax has been paid to this state."

While the use tax act contains a section exempting certain sales from the tax, nothing in that act purports to exempt isolated or occasional sales. However an isolated or occasional sale does not come within the definition of a retail sale as defined in the *sales tax act*. Sec. 80-15-2, U. C. A. 1943, as amended by Chapter 92, Sec. 1, Laws 1943 provides:

"* * * (e) * * * The term 'retail sale' means every sale within the state of Utah by a retailer or wholesaler to a user or consumer, except such sales as are defined as wholesale sales or otherwise exempted by the terms of this act; *but the term 'retail sale' is not intended to include isolated nor occasional sales by persons not*

*regularly engaged in business,* nor seasonal sales of crops, seedling plants, garden or farm or other agricultural produce by the producer thereof, nor the return to the producer thereof of processed agricultural products." (Italics added.)

This court on rehearing of *Union Portland Cement Co.* v. *State Tax Commission,* 110 Utah 152, 176 P. 2d 879, held that in view of the legislative history of the sales and use tax acts and their administrative interpretation made with the knowledge and implied approval of the legislature, they are to be considered as correlative and complementary, and so far as exemptions are concerned, legislative created specific exemptions from the sales tax are also to be treated as exemptions from the use tax. We now affirm our holding in that case. To hold otherwise would be to render exemptions from the sales tax useless, unless they were also found in the use tax act.

The defendant argues that inasmuch as the sales tax is imposed upon "every retail sale of tangible personal property," the tax is in fact not imposed upon a transaction which is an isolated or occasional sale for the reason that it is not a retail sale as defined by the statute and, therefore, it is an "exclusion" and not a "specific exemption" as dealt with in the *Union Portland Cement* case. The defendant draws a distinction between sales, on the one hand, which it claims are retail sales, but exempt from the tax, e. g. sales to or by religious or charitable institutions and sales of industrial coal, and sales, on the other hand, which are non-retail sales because they do not come within the definition of a retail sale in 80-15-2(e), U. C. A. 1943, as amended by Chapter 92, Sec. 1, Laws 1943, quoted supra, e. g. isolated or occasional sales. There is no merit in this argument. At least for the purpose of integrating the use and sales tax acts no distinction exists between sales which the defendant calls "exempted" and sales which it calls "excluded." The use tax does not apply in either instance. If the defendant's contention were true, seasonal sales of crops, plants, and agricultural produce made within the state would be sub-

ject to the use tax since such sales, like isolated or occasional sales, are non-retail sales upon which the sales tax does not operate. Clearly the legislature did not intend to free seasonal sales of agricultural produce from the operation of the sales tax, only to have them caught up by the operation of the use tax. Furthermore, the legistlature in the wording of the definition of a "retail sale" not only does not make the distinction contended for by the defendant, but negatives any such distinction, to wit:

> "The term 'retail sale' means every sale within the state of Utah by a retailer or wholesaler to a user or consumer, *except* such sales as are defined as wholesale sales *or otherwise exempted by the terms of this act;* but the term 'retail sale' *is not intended to include isolated nor occasional sales* by persons not regularly engaged in business, * * *" (Italics added.)

There is no valid distinction between sales which are not retail sales because *excepted* from the definition of the term "retail sale" and sales which are not retail sales because they are *not included* within that term. A further proof that the legislature intended isolated or occasional sales made within this state not to be subject to the use tax is manifested in the fact that the 1949 session of the Legislature amended the definition of a "retail sale" in the sales tax act to provide that "no sale of a motor vehicle shall be deemed isolated or occasional for the purposes of this act." Laws 1949, c. 83. Had the isolated or occasional sale of a motor vehicle within this state prior to this amendment been subject to the use tax, there would have been no point in enacting the amendment as both the sales and the use tax are imposed at the same rate.

In the *Union Portland Cement case* we stated that "legislative created specific exemptions" [110 Utah 152, 176 P. 2d 881] from the sales tax were also to be treated as exemptions from the use tax. We were there concerned with a "specific exemption"—the sale of industrial coal. There was no need to go further in that opinion and enumerate every sale which we considered specifically exempted.

Courts, being unable to anticipate every conceivable question which might arise in the future, must, of necessity, limit their opinions to the facts of the case at hand.

The wording of the use tax act is very broad and sweeping. It imposes a tax on the storage, use or other consumption in this state of tangible personal property purchased for storage, use or other consumption in this state. Exempted from the use tax, among other things, is the storage, use or other consumption of property, the gross receipts from the sales of which, have been subjected to the sales tax. In the *Union Portland Cement* case we narrowed further the scope of the use tax. But this narrowing did not make the use tax act useless or a "nullity." Remaining for the use tax to operate upon is the storage, use or other consumption of property purchased outside of this state and brought into this state for storage, use or other consumption. The sale of property made outside this state is not subject to our sales tax, it being a sale which this state cannot constitutionally tax. But when such property is brought into this state for storage, use or other consumption here, thus coming to rest as an integrated part of the total property in this state, then the use tax comes into operation and taxes, not the event of the sale of the property, but the event of storage, use or other consumption of that property within this state.

We hold therefore, that the storage, use or other consumption of property, the sale of which is made in this state and which is not made amendable to the sales tax, is likewise not subject to the use tax. Thus it follows that isolated or occasional sales made in this state are not subject to the operation of the use tax. We express no opinion as to whether isolated or occasional sales made outside of this state are subject to our use tax.

Was the sale of Geneva and the inventories an isolated or occasional sale within the meaning of our statute? What constitutes an isolated or occasional sale has not heretofore

been determined by this court, and none of the cases we have found decided by other jurisdictions on this question is helpful. However, the regulations of the agencies and commissions administering the sales and use tax acts of the several states decidedly indicate that they have considered the sale of an integrated business from one owner to another as coming within the definition of an isolated or occasional sale, or a casual and isolated sale as it is called in some of the acts. The defendant's Sales and Use Tax Regulation, No. 38, is as follows:

"Isolated or occasional sales made by persons not regularly engaged in business are not subject to the tax. Under this rule no sale is taxable if it is not made in the regular course of a business of a person selling tangible personal property. The word 'business' as thus used refers to an enterprise, engaged in selling tangible personal property notwithstanding the fact that the sales may be few or infrequent.

"Wholesalers, manufacturers, and processors who sell primarily other than at retail are not deemed to be making casual or isolated sales when they sell such tangible personal property for use or consumption.

"All sales made by officers of a court pursuant to court orders are occasional sales, with the exception of sales made by trustees, receivers, assignees and the like in connection with the liquidation or conduct of a regular established place of business. Examples of such casual sales are those made by sheriffs in foreclosure proceedings and sales of confiscated property.

"If a sale is an integral part of a business whose primary function is not the sale of tangible personal property, then such is not an isolated or occasional sale. For example, the sale of repossessed automobiles by a finance company is not an occasional or isolated sale.

"No sale of an article of tangible personal property made by a dealer in such type of property is considered to be isolated or occasional regardless of whether or not such article was used by such dealer in his regular business prior to the sale. For example, the sale of a wrecker used by a motor vehicle dealer in his business is subject to tax when sold at retail."

Connecticut's Sales and Use Tax Regulation, No. 15, provides:

"A 'retail sale' as defined by Section 2, Subsection 3½ of the Sales and Use Tax Act, shall not include the following casual or isolated sales which are exempt from tax:

"(a) Isolated sales of a non-recurring nature made by a person not engaged in the business of selling tangible personal property.

"(b) Sales of articles of tangible personal property required for use or other consumption by a retailer or seller which are not sold in the regular course of any business engaged in by such retailer or seller.

"Examples of exempt sales:  *  *  *  (2) *Sales of an entire business by the owner thereof  *  *  *"* (Italics added.)

### Maryland's Retail Sales and Use Tax Rules and Regulations states:

"Rule 39. Casual and isolated sales. The tax does not apply to casual and isolated sales made by a vendor who is not engaged in the business of selling tangible personal property. However, this exemption does not apply to sales made by those persons who hold themselves out as engaged in a retail business, notwithstanding the fact that their sales may be few and infrequent  *  *  *

"Sales of fixtures and equipment in conjunction with a complete liquidation of a person's business are considered casual and isolated sales."

### Ohio's regulations furnished this example:

"Where a person sells his household furniture; where a farmer sells his farm machinery, or other farm equipment; or where a grocer sells his cash register, counters, or other store fixtures at auction or otherwise, such persons are not 'engaged in the business' of selling tangible personal property at retail with respect to this property, but are making casual or isolated sales."

Under Art. I of the Illinois regulations the selling of tangible personal property as machinery and other capital assets by a retailer which he has used in his business and no longer needs and which he does not otherwise engage in selling as a part of his regular business is an isolated and occasional sale.

The above regulations, as well as those of other states which we have examined, definitey contemplate an isolated

or occasional sale as one made by a person while not in the pursuit of the regular course of his business of selling tangible personal property. We think this is a proper ■ and fair interpretation. Thus ordinarily when a person sells his entire business outright to a single purchaser, the sale is isolated or occasional since the regular course of his business is not selling businesses. The defendant has not heretofore attempted to tax the personal property changing ownership when an integrated business has been sold. But it contends in the instant case that the War Assets Administration and the Reconstruction Finance Corporation are engaged in the business of selling surplus government property, and hence the selling of an integrated business by them is not an isolated or occasional sale. It points out that the Reconstruction Finance Corporation through the War Assets Administration has sold six other integrated businesses in Utah since the close of World War II, and that the War Assets Administration has sold millions of dollars worth of tangible personal property in this state since December of 1945.

Assuming, without deciding, that the War Assets Administration makes retail sales as defined by our sales tax act when it sells surplus items of government property such as motor vehicles, life rafts, sleeping bags, etc. to ultimate consumers, it is not making a "retail ■ sale" when it sells an integrated business to a new operator. The very nature and character of the two types of sales is radically different. The sale of a truck or a raft involves the simple exchange of an article of tangible personal property for a unit price. But the sale of an integrated business for a lump sum price is a complex transaction for it contemplates the exchange of real property as well as personal property, tangibles and intangibles, without regard as to what amount is being paid for real property, personal property, tangibles, or intangibles. The fact that the tangible personal property and the inventories in this case were transferred to the plaintiff by bills of sale

separate from the real estate and the fact that the plaintiff made a division of the purchase price after the sale to determine what amount was expended for real property for the purpose of affixing internal revenue stamps on the deeds of conveyance, do not indicate that the transaction was other than the sale of an integrated business for a lump sum purchase price. We do not mean to imply that a person can avoid paying the tax on the sale of an article of personal property justly due by combining it with the sale of real property for a lump sum price. We only hold the legislature did not intend to tax the sale of personal property transferred as a component part of the sale of an integrated business.

Thus we conclude that the sale of the plant and the inventories was an isolated and occasional sale within the meaning of our statute, and it becomes unnecessary to consider the other arguments raised by counsel. The Tax Commission's order making the deficiency assessment is reversed. Costs to plaintiff.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (dissenting).

I agree with the opinion on rehearing in the *Union Portland Cement Co. v. State Tax Commission*, 110 Utah 152, 176 P. 2d 879, but think it is not applicable here. I also agree that this was not a "retail sale" but was an "isolated" or "occasional sale" as those terms are used in the Sales Tax Act and therefore this sale does not come within the scope of that act and is not subject to the sales tax. As I view it, since this sale does not come within the scope of the Sales Tax Act and is not subject to that tax, but is not expressly exempted therefrom by a specific statutory provision to that effect, and since it is included within the scope of the Use Tax Act and, as hereinafter pointed out, there are definite reasons why it should be excluded from the sales

tax but be subject to the use tax I think the legislature intended it to be subject to the use tax.

If we adopt the broad view that every sale not subject to the sales tax is therefore exempt from the use tax, we eliminate all sales from the use tax and that act becomes a nullity. For every sale which is subject to the sales tax is expressly exempted from the use tax and every sale either is or is not subject to the sales tax. This the legislature clearly did not intend and just as clearly it did not intend to expressly exempt, some sales from the sales tax only to thereby make them subject to the use tax in exactly the same amount. If the Use Tax Act is to have any meaning, purpose or effect, whatever, we must draw a line somewhere between these two extremes. The reasonable place to draw this line is, in my opinion, to hold that where a sale, though not expressly exempted therefrom, does not come within the scope of the Sales Tax Act but does come within the scope of the Use Tax Act and is not expressly exempted therefrom and there is an apparent reason why such sale should be subject to the use tax though not subject to the sales tax, then such sale is subject to the use tax. However, every sale which comes within the general scope of the Sales Tax Act but is expressly exempted from that tax, where there is no apparent reason why such sale should be exempted from the sales tax and not from the use tax, should also be treated as exempted from the use tax. This is in full accord with the holding on rehearing in the *Union Portland Cement Co.* case and the most reasonable construction, in my opinion, of those enactments.

In the *Union Portland Cement* case we said, on pages 156 and 157 of 110 Utah, on page 881 of 176 P. 2d

"that the Sales and Use Tax Acts are to be considered as *correlative* and *complementary* and that, *as far as exemptions are concerned, legislative created specific exemptions from the sales tax* are also to be treated as exemptions from the use tax." (Emphasis added.)

There we pointed out that the two acts are "correlative" and "complementary" which to me means that they were

intended to cover similar sales made for the same general purposes and uses but that the Use Tax Act, being later enacted was intended to place the tax on certain sales which were not within the scope of the Sales Tax Act, otherwise, there was no purpose in enacting the Use Tax Act. That opinion said nothing about exempting from the use tax sales not within the scope of the Sales Tax Act, it dealt only with "exemptions" from that act, and carefully limited such exemptions from the use tax to "legislative created specific exemptions from the sales tax." The reasons given in the *Union Portland Cement* case, 110 Utah at page 156, 176 P. 2d at page 881, for such exemptions were that

"the legislature being fully informed of the interpretation for some seven years not only did not see fit to clarify the law but during that seven year period added other exemptions to the sales tax without expressly adding those same exemptions to the Use Tax Act. Unless the Tax Commission's interpretation is correct, such additional exemptions to the sales tax would be practically meaningless because those exemptions would remove the sales tax only to make the use tax applicable. When an exemption from a two per cent tax was granted by one act, the other act would ipso facto pick up the items exempt and they would be taxable. It is difficult to see what purpose the legislature would accomplish by a mere shift from the operation of the sales tax to an operation of the use tax by the aimless method of exempting certain articles from one act only to have them picked up as taxable items under another act yielding exactly the same revenue."

This is right in line with what we have said above. That opinion not only carefully limited the exemptions from the use tax to "legislative created specific exemptions from the sales tax" but also gave as the reason for extending such exemptions to the use tax to be that otherwise the exemptions from the sales tax would be practically meaningless and an aimless shifting of the tax from one act to the other. Such reasoning has no application to a case like this since the obvious purpose of the use tax was to impose a tax similar in amount to the sales tax on other sales not within the scope of that act, where there are apparent reasons why

such sales were not covered by the sales tax but such reasons do not apply to the use tax.

The following provisions of the act throw light on this subject:

Section 80-15-4, U. C. A. 1943, as amended by the Laws of Utah 1943, c. 93, sec. 1, page 136, provides:

"From and after the effective date of this act there is levied and there shall be collected and paid:

"(a) A tax upon every retail sale of tangible personal property made within the state of Utah equivalent to two per cent of the purchase price paid or charged, * * *, provided, however, that the sale of coal, fuel oil and other fuels shall not be subject to the tax except as hereinafter provided."

Section 80-15-2, U. C. A. 1943, as amended Laws of Utah 1943, c. 92, pages 134-5, provides:

"(e) The term 'retailer' means a person doing a regularly organized retail business in tangible personal property, known to the public as such and selling to the user or consumer and not for resale, and includes commission merchants and all persons regularly engaged in the business of selling to users or consumers within the State of Utah; but the term 'retailer' does not include farmers, gardeners, stockmen, poultrymen or other growers or agricultural producers, except those who are regularly engaged in the business of buying or selling for a profit. The term 'retail sale' means every sale within the state of Utah by a retailer or wholesaler to a user or consumer, except such sales as are defined as wholesale sales or otherwise exempted by the terms of this act; but the term 'retail sale' is not intended to include isolated nor occasional sales by persons not regularly engaged in business, nor seasonal sales of crops, seedling plants, garden or farm or other agricultural produce by the producer thereof, or the return to the producer thereof of processed agricultural products."

Section 80-15-6, U. C. A. 1943, deals exclusively with what sales are exempt and what sales are subject to the sales tax. It lends no aid in determining the question here presented. There are other "specific exemptions" from the sales tax not contained in Section 80-15-6. See Sec. 80-15-2(f), U. C. A. 1943, as amended.

From Section 80-15-4 it is clear that a non-retail sale of tangible personal property is not subject to the sales tax, not because it is specifically exempted therefrom but because it is not within the scope of sales covered by the Sales Tax Act. There is no express provision exempting non-retail sales, occasional or isolated sales from the tax, but the wording of the statute does not include such sales among those covered by the tax. This, I presume, is what the prevailing opinion meant by the term "an exclusion" as distinguished from a "specific exemption." Of course, if we treat as exempt from the use tax every sale which does not come within the scope of Sales Tax Act as well as every sale specifically exempted therefrom, then every sale not covered by the sales tax is thereby exempt from the use tax and that act becomes a nullity because it expressly exempts therefrom every sale which is subject to the sales tax.

The exemption of the sale of industrial coal from the sales tax, although provided for in Section 80-15-4 and not 80-15-6 which deals exclusively with exemptions, is a "legislative created specific exemptions from the sales tax." It comes within the scope of sales subject to that tax and then is expressly exempted therefrom by the following provision, *"provided, however,* that the sale of coal, * * * shall not be subject to the tax except as hereinafter provided".

In the *Union Portland Coment* case we definitely limit exemptions which are deemed exempted from the use tax to "legislative created specific exemptions."

From the difference in the purposes and the surrounding circumstances it is apparent why occasional and isolated sales are excluded from the sales tax but are subject to the use tax. Section 80-16-3, U. C. A. 1943, which creates the use tax provides:

"There is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal property purchased on or after July 1, 1937, for storage, use or other consumption in this state at the rate of two per cent of the sales price of such property.

"Every person storing, using or otherwise consuming in this state tangible personal property purchased shall be liable for the tax imposed by this act, and the liability shall not be extinguished until the tax has been paid to this state."

Sales of tangible personal property only when made within the State are subject to the sales tax but such property sold outside this state for storage use or other consumption within this state is subject to the use tax. While nominally the sales tax is levied against the purchaser, yet only the vendor is liable to the state for that tax. 80-15-5, U. C. A. 1943. Only sales made by a vendor regularly engaged in the business of selling to users or consumers and not for resale are required to pay that tax. 80-15-2(e) and (f), U. C. A. 1943, as amended. By Section 80-15-3, U. C. A. 1943 all such vendors before making any sales are required to obtain a license from the state. Since the only means of collecting that tax is through the vendor who is regularly engaged in the business of making such sales it is apparent why only retail sales and not occasional or isolated sales were made subject to that tax. It was not because the legislature intended that occasional or isolated sales should not be subject to the tax but was merely a matter of convenience in collecting the same.

That reason does not apply to the use tax. Property sold either outside of or within the state for storage, use or other consumption in this state is subject to that tax when it is brought within this state and the purchaser where he did not purchase from and pay the tax to a vendor regularly engaged in business in this state was made liable to the state for the payment of such tax whether the sale was made in this state or not and it was immaterial whether it was an occasional or regular sale. 80-16-2(j), and 80-16-3, U. C. A. 1943; *Twaits Co.* v. *Utah State Tax Commission,* 106 Utah 343, 148 P. 2d 343. Since, where the sale was made outside of the state, the tax had to be collected from the purchaser it made no difference in such case whether the sale was an isolated or occasional transaction or whether it was made

through a person regularly engaged in business, because this state could not require a person doing business in another state to collect this tax for it. So the convenience in collecting this tax from a person regularly engaged in business which existed in the case of the sales tax and was the reason for limiting that tax to a retail sales and for not covering occasional or isolated sales does not exist in the case of the use tax. In view of these facts it would be unusual for the legislature to intend to make an automobile sold in another state for use in this state subject to the use tax if purchased from a regular dealer but to exclude it from that tax if it were purchased from a person not engaged in the selling business. The tax would be as easy to collect in the one case as in the other. Certainly the legislature did not intend to levy the tax on an occasional sale made outside of the state but exclude it from the tax when made within the state. The prevailing opinion, by stating that we express no opinion on whether an isolated or occasional sale made outside of the state is subject to the use tax indicates that is still an open question in this state. But in the *Union Portland Cement* case we expressly held that to exempt from the tax a sale made within this state while collecting the tax on a sale made outside of this state would be unconstitutional.

The prevailing opinion says

"If the defendant's contention were true, seasonal sales of crops, plants, and agricultural produce made within the state would be subject to the use tax since such sales, like isolated or occasional sales, are non-retail sales upon which the sales tax does not operate."

This statement does not answer the above argument that there is an apparent reason why the isolated sale should be excluded from the sales tax and still be subject to the use tax, which reason is one of convenience in making collections. But no attempt is made to point out any fallacy in that argument, nor to give any reason for concluding that a sale made out of this state should be subject to the use tax

but that an isolated sale should not be subject to it. In the case of the sale of seasonal crops and many other sales of small articles there is no apparent reason why they should be exempted or excluded from the sales tax and then be made subject to the use tax. Such sales are readily distinguishable from the present situation.

The prevailing opinion relies very heavily on the previous administrative construction placed on this statute. It points to the 1949 amendment providing that "no sale of a motor vehicle shall be deemed isolated or occasional" as evidence of such construction. But this court is definitely committed to the doctrine that incorrect administrative constructions are not binding on this court. *Utah Hotel Co.* v. *Industrial Commission,* 107 Utah 24, 151 P. 2d 467, 153 A. L. R. 1176.

But the amendment above referred to makes it clear that the legislature intended to tax all property, whether the sale was isolated or not, where the sale would readily come to the attention of the commission. Such legislation was obviously necessitated by the incorrect construction of the Use Tax Act placed thereon by the commission.

Like the sale of a motor vehicle the sale of a business in bulk is such as would readily come to the attention of the commission and there would be no inconvenience in collection of the tax thereon whether the sale was made within or outside of this state. This is particularly true of the sale of a large business such as the one here involved.

Aside from the sales made outside of this state the prevailing opinion apparently recognizes no sales which are subject to the use tax. But the legislature clearly intended that sales made in this state should be subject thereto for it made elaborate arrangements for the collection of such by providing for a license to regular dealers in such sales within this state. If only sales made outside of this state were subject to this tax then all those provisions were a nullity.

Thus it is clear that the legislature intended a sale to be subject to the sales tax only when the sale was made in this

state by a vendor regularly engaged in the selling business here because it adopted the policy of collecting only from the vendor. But the use tax, being levied largely against property sold outside this state must be collected in such cases from the purchaser. In that case, the convenience in collecting only from the vendor disappears and so the use tax was made to cover both occasional and isolated sales and sales made in the regular course of business. And since we could not constitutionally tax property sold by an occasional sale outside the state and not do the same with property so sold within this state the use tax must cover such occasional sales made within the state. Thus it is apparent why the legislature intended to make occasional sales subject to the use tax but not subject to the sales tax. I therefore submit that the sale here in question was subject to the use tax and that the decision of the commission was correct.