360 P.2d 819

**CHEMICAL & INDUSTRIAL CORPORATION, Plaintiff,**

v.

**STATE TAX COMMISSION OF UTAH, Defendant.**

No. 9360.

Supreme Court of Utah.

April 7, 1961.

---

4. See Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344; Dupler v. Yates, 10 Utah 2d 251, 351 P.2d 624.

Frost & Jacobs, Cincinnati, Ohio, Jerry L. Cowan of Frost & Jacobs, Cincinnati, Ohio (Van Cott, Bagley, Cornwall & McCarthy, David E. Salisbury, Salt Lake City, of counsel), for plaintiff.

Walter L. Budge, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., for defendant.

WADE, Chief Justice.

The Chemical & Industrial Corporation seeks a review of a use tax deficiency assessment against it by the Utah State Tax Commission on certain tangible. personal property used in .the construction of an ammonium nitrate plant in 1956 for Columbia-Geneva Division, United States Steel Corporation at Geneva, Utah. Hereafter we shall refer to the Chemical & Industrial Corporation as the plaintiff and the Utah State Tax Commission as the defendant.

The plaintiff is an Ohio corporation whose business is the designing and contracting for the building of facilities for the production of chemical and allied products. In 1956 it was not authorized to do business in Utah. However, its wholly owned subsidiary corporation, the Chemical & Industrial Construction Company was so qualified.

In July, 1956, the Chemical Plants Division, Blaw-Knox Company of Pittsburgh, Pennsylvania, agreed to construct an ammonium nitrate plant for the Columbia-Geneva Division, U. S. Steel Corporation at Geneva, Utah. In November, 1956, the Blaw-Knox Company entered into an agreement . with plaintiff whereby plaintiff as subcontractor, obligated itself to furnish all materials, supplies, equipment, labor, services and anything necessary for the construction of the ammonium nitrate plant at Geneva, Utah, of which the Blaw-Knox Company was the prime contractor. One of the terms in the contract of the plaintiff and the Blaw-Knox Company provided that:

"The title to all Work completed and in the ·course of construction at the site and of ·all materials which are

delivered and stored at the site and which will necessarily be incorporated in the Work, as between the Contractor [Blaw-Knox Company], Owner [Columbia-Geneva Division, United Steel Corporation] and Subcontractor [Plaintiff] shall be in Owner."

Shortly after receiving the subcontract for the construction of the ammonium nitrate plant from the Blaw-Knox Company, plaintiff entered into a contract with its wholly owned subsidiary, the Chemical & Industrial Construction Company whereby that corporation agreed to furnish all the labor and services and to receive, haul, deliver and store all necessary materials and equipment to perform the job. Plaintiff purchased the tangible personal property on which the deficiency use tax assessments were levied from nonresidents outside the state of Utah and paid no sales taxes to their vendors. The materials were shipped in interstate commerce to Geneva, Utah, where they were received by the Chemical & Industrial Construction Company which used or stored them at the plant site. It was stipulated that the Chemical & Industrial Construction Company never had title to any of these materials which it received from plaintiff.

Plaintiff claimed that it ceased to be the owner of the tangible personal property when its transit in interstate commerce ended under the terms of its contract with Blaw-Knox Company, and therefore there was no taxable moment during which it was liable to the state of Utah for a use tax. The Tax Commission thereupon made identical deficiency use tax assessments for the personal property involved herein against the Columbia-Geneva Division, United States Steel Corporation, Blaw-Knox Company, and the Chemical & Industrial Construction Company. A hearing was thereafter held on all four of the deficiency assessments at which all four parties appeared. At this hearing the contract between the United States Steel Corporation with Blaw-Knox Company was introduced in evidence as well as the contract of the Blaw-Knox Company with the plaintiff and its contract with the Chemical & Industrial Construction Company dealing with the subcontracting of the job. From the contract between the United States Steel Corporation and the Blaw-Knox Company, the prime contractor, it appears that the Blaw-Knox Company in a letter dated June 18, 1955, and which was part of the correspondence incorporated by the parties thereto in the contract stated:

"15. Extras: We understand that you propose to contract for this plant on a *complete turnkey basis* and we have, therefore investigated site conditions, local labor conditions and so forth * * *." (Emphasis ours.)

Some months later the Tax Commission held another hearing in the matter of the use tax deficiency assessed against plaintiff

wherein an assistant director of purchases for the Columbia-Geneva Division of the United States Steel Corporation testified that the type of contract entered into by the United States Steel Corporation and the Blaw-Knox Company was one known as a turnkey contract and was headed "Construction Contract." That a turnkey contract is one in which the contractor agrees to build a complete plant or a complete unit installed and operative "to the extent of teaching our people how to operate it" and although progress payments are made title does not pass until the work is accepted and final payment is made.

By the terms of the agreement between the United States Steel Corporation and the Blaw-Knox Company, the Blaw-Knox Company as the contractor was to furnish and pay for all materials, supplies, services and equipment not furnished by the United States Steel Corporation and to perform all things necessary for the construction and completion of the facilities and was to assume the risk for all loss and damage to the work until its completion and acceptance by the United States Steel Corporation.

The Tax Commission concluded from evidence presented to it that plaintiff was the owner of the materials used in the construction of the facility at the time they ended their transit in interstate commerce and was in possession of them during a "taxable moment."

Plaintiff concedes that when property is brought into the state for storage, use or other consumption the owner is subject to the use tax.[1] However, it insists that it was not the owner of the materials when they ended their transit in interstate commerce because in its contract with the Blaw-Knox Company, the prime contractor, it was agreed by them that the title to all materials which were delivered and stored at the site, and which would necessarily be incorporated in the facility, would be in the United States Steel Corporation. If, as they claim, title had vested in the United States Steel simultaneously with the end of the interstate commerce shipment, then it would be the owner at the time of the first taxable moment in this state and would be liable for the tax. Plaintiff contends that because of this agreement there was never any "taxable moment" when the materials had ended their transit in interstate commerce since ownership was transferred immediately upon delivery at the plant site and until that delivery they were still in transit in interstate commerce, and therefore imposition of the tax would be an undue burden on interstate commerce.

The fallacy of this argument is apparent. The United States Steel Corporation was not a party to the contract in which plaintiff agreed with the Blaw-Knox Company that the United States Steel Corporation should be the owner of the materials shipped by

1. Geneva Steel Co. v. State Tax Commission, 116 Utah 170, 209 P.2d 208.

plaintiff to the plant site. When the United States Steel Corporation became the owner of such materials depended upon its contract with the Blaw-Knox Company. There being nothing in the contract between the United States Steel Corporation and the Blaw-Knox Company which would require a finding that it was the intention of the parties that title to materials to be used in the construction of the plant should pass to the United States Steel Corporation when they were delivered and stored at the plant site and before such materials became a part of the structure, no contract between the Blaw-Knox Company and its subcontractor, the plaintiff, could, without the consent of the United States Steel Corporation, change the terms of that contract. In other words, without its consent the United States Steel Corporation could not be made the owner of the materials which entered into the construction of the plant before their incorporation in such facility. It follows that the Tax Commission could reasonably find that plaintiff was the owner of those materials after they were delivered to the Chemical & Industrial Construction Company, because it was stipulated that this company was never the owner of such materials. The materials having ceased being in interstate commerce when delivered and stored in Utah before incorporation into

the plant they became subject to the use tax.[2]

The plaintiff being the owner of the materials which were essential to the building of the facility by its subcontractor, the delivery and storage of these materials before use by its subcontractor was necessarily its acts and by so doing plaintiff was sufficiently present within this state to subject it to the Use Tax Act. In Kansas City Structural Steel Co. v. State of Arkansas[3] the Supreme Court of the United States upheld a state court decision that the Kansas City Structural Steel Co. was doing business within the state in which it had procured a contract to construct a bridge and had delivered to its subcontractor materials necessary to be used in such construction. It was the contention of the Kansas City Structural Steel Co., which was a foreign corporation not licensed to do business in Arkansas, that when it bid for and obtained a contract to construct a bridge in Arkansas it was not doing business in Arkansas and therefore subject to a fine for failure to obtain permission to do business therein when it subcontracted the work to residents of Arkansas and shipped and delivered to them materials obtained in Missouri to be used in the construction of the bridge because all its acts were done in interstate commerce and not in intrastate commerce. In deciding adversely to this

2. See Note 1.

3. Kansas City Structural Steel Co. v. State of Arkansas, 269 U.S. 148, 46 S.Ct. 59, 61, 70 L.Ed. 204.

contention the United States Supreme Court said :-

"* * * The delivery of the materials to the subcontractor was essential to the building of the bridge, and that was an intrastate and not an interstate transaction. The fact that the materials had moved from Missouri into Arkansas did not make the delivery of them to the subcontractor interstate commerce."

We have carefully considered all of plaintiff's other allegations of error but find no merit to them.

Affirmed. Costs to defendant.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.